**Howard Staton MILLER, Appellant,**

**v.**

**J. D. COX, Superintendent of the Virginia State Penitentiary, Appellee.**

**No. 15278.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 9, 1972.

Decided March 30, 1972.

Harvey E. Bines, Charlottesville, Va. (Court-appointed), for appellant.

William P. Robinson, Jr., Asst. Atty. Gen. of Va. (Andrew P. Miller, Atty. Gen., on brief), for appellee.

Before CRAVEN and RUSSELL, Circuit Judges, and CHAPMAN, District Judge.

CRAVEN, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Eastern District of Virginia, Norfolk Division, denying a state prisoner habeas corpus relief under 28 U.S.C.A. § 2241(c) (3). We affirm.

Appellant Miller was arrested and charged with the armed robbery of a Richmond gas station and the abduction of its attendant, Earl Johnson. The robbery was perpetrated by three black men about 1:30 A.M. Soon thereafter police stopped the getaway vehicle but the occupants fled leaving Johnson unharmed. The search continued. Between 3:30 A.M. and 4:00 A.M. officers located three black men walking together in downtown Richmond. When the three saw the police car, they broke and ran. The officers pursued them and apprehended Miller and one Lavone Robbs. They were searched, and several rolls of coins like those taken in the robbery were found in their pockets and a revolver in Lavone Robbs' jacket. They were then taken to police headquarters. At the police station they were put in a room with Grover Robbs, Lavone's brother, who had been arrested also as a suspect in the same robbery and abduction. All three were advised that they had a right to remain silent and that anything they said could be used against them in court. A police detective then took Grover Robbs aside and talked with him. Within the presence and hearing of Miller and Lavone Robbs, Grover Robbs "admitted that he was with these two men when they pulled the robbery and abducted Mr. Johnson in his car, and he pointed to both men that they were with him." (App. 57). Miller and Lavone Robbs "made no statement at that particular time, but before and after that they denied any part in the robbery." (App. 61). The detective asked Grover Robbs "who had the gun," but "he refused to name the person who actually had the gun." (App. 58).

All three were tried in the Hustings Court of the City of Richmond, Part II, before a judge sitting without a jury. Earl Johnson, the victim of the crimes, positively identified Miller and his codefendants at the trial. His testimony was persuasive because of unusual opportunity both before and after the crime to observe them. Grover Robbs' confession and Miller's silence in response to it were admitted into evidence. Grover Robbs did not testify. The three were convicted of armed robbery, abduction, and unauthorized use of an automobile. Miller appealed his conviction to the Virginia Supreme Court of Appeals and has unsuccessfully exhausted state remedies.

After careful consideration of the record, briefs, and arguments in this case, we conclude that with one exception the alleged grounds for relief are without merit and warrant little comment. Miller was not incompetently represented in violation of his Sixth Amendment right to adequate counsel. The transcript simply does not show that his attorney's services were "so transparently inadequate as to make a farce of the trial." Root v. Cunningham, 344 F.2d 1, 3 (4th Cir. 1965). Nor was Miller denied effective assistance of counsel because he and his codefendants were represented by a single attorney at their joint trial. Miller does not show that his interests were significantly in conflict with the interests of Lavone and

Grover Robbs. His case is distinguishable from Sawyer v. Brough, 358 F.2d 70 (4th Cir. 1966), in which the court held that one attorney could not represent co-defendants at a joint trial where one had confessed implicating the other. In *Sawyer,* the confessing defendant attempted to exculpate himself by shifting most of the blame to his codefendant. This created the conflict of interests in *Sawyer*: the defendant implicated by the confession would have wanted it excluded or attacked, but the defendant partially absolved by the confession would have wanted it admitted and defended. No such conflict of interests existed in the present case. All the defendants in the present case plead "not guilty." The confession of Grover Robbs contained nothing exculpatory of him or even mitigating the offense. He did not even attempt to shift blame to Lavone Robbs or Miller by asserting that either had the gun. All three defendants had an identical interest with respect to the confession—it would have been in the interest of all to have the confession excluded or attacked.

Miller's claim that Grover Robbs' confession implicating him was inadmissible is not without merit.

The trial judge did not rely on the content of Grover Robbs' confession but rather on Miller's silence in response to the accusatory material within it. In summing up the evidence upon which he based his decision, the judge said,

> Now, you have another thing, two of the men have denied it, before and since, when they were pointed out by their third codefendant. At that time they said nothing, when he accused them of being with him. (App. 78).

The rule regarding tacit or adoptive admissions followed by the Virginia courts has been expressed thus by the Virginia Supreme Court of Appeals in Dykeman v. Commonwealth, 201 Va. 807, 811–812, 113 S.E.2d 867, 871 (1960):

> The general rule is that when a statement accusing one of the commission of an offense is made in his presence and hearing and is not denied, both the statement and the fact of his failure to deny are admissible in a criminal proceeding against him as evidence of his acquiescence in its truth. It is based on the theory that the natural reaction of one accused of crime is to deny the accusation if it is unjust or untrue. The accusation and his silence thereunder to be admissible must, however, have been under such circumstances as would naturally call for a reply or denial and such as would afford a favorable opportunity for denial. The character of the incriminating statement made to the accused would render it inadmissible as hearsay except for the fact that the statement is not offered in evidence as proof of a fact asserted but as a predicate to the showing of the reaction of the accused thereto. In all instances caution must be exercised in receiving evidence of a statement made to the accused and his failure to deny it. The test is whether men similarly situated would have felt themselves called upon to deny the statements affecting them in the event they did not intend to express acquiescence by the failure to do so.

■ Mindful of the caveat of the Virginia Supreme Court of Appeals that "caution must be exercised" in admitting evidence under this rule, we conclude that Grover's confession as a context for Miller's silence was inadmissible under Virginia law because it was not made "under such circumstances as would naturally call for a reply or denial." Miller had been told only shortly before that he had a right to remain silent. It is likely that this instruction effectively deadened his natural inclination to speak out in his own defense. Furthermore, because Miller denied his guilt both before and after Grover's confession, we think that he would not have felt himself "called upon to deny the statements affecting [him]," and that his silence cannot logically be construed as an admission of guilt. *See* Knight v. Commonwealth, 196 Va. 433, 83 S.E.2d

738, 740–741 (1954); Plymale v. Commonwealth, 195 Va. 582, 79 S.E.2d 610, 615–616 (1954).

But Miller's reliance on Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), is misplaced.[1] In that case the Supreme Court held that the introduction of a codefendant's confession that implicated the defendant violated the defendant's Sixth Amendment right to confront witnesses against him because the codefendant refused to testify. The trial judge here relied on the confession not for the truth of its content but as a context for Miller's silence. Miller would have gained nothing from cross-examining Grover Robbs about the confession because the truthfulness of the confession was irrelevant to the purpose for which it was admitted.

 Finally, Miller claims that he was deprived of his Fifth Amendment right to remain silent by the trial judge's reliance on his silence in response to Grover Robbs' confession. He bases his claim upon the following language from Miranda v. Arizona, 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966):

> In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation.

At the time of his silence, however, Miller was not under police interrogation. The attention of the police detective was focused upon Grover Robbs and not upon Miller. Miller's silence was a reaction to the voluntary accusation by Grover Robbs and not to a question or accusation by the police detective directed to him. The Fifth Amendment bars confessions compelled by the government and not by circumstance. Miller's claim, therefore, is without merit. But see United States ex rel. Smith v. Brierly, 384 F.2d 992 (3rd Cir. 1967); United States v. McKinney, 379 F.2d 259 (6th Cir. 1967); Ivey v. United States, 344 F.2d 770 (5th Cir. 1965).

Although it was error under the Virginia law of evidence to receive Robbs' confession as explanatory of Miller's silence when accused, we think it was not error of constitutional magnitude, and we deem it harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). That Miller fled when no man pursued, that he possessed similar rolls of coins so soon after the robbery, and that he was so persuasively identified by the victim constitutes "overwhelming" evidence of guilt without regard to his silence under accusation. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

Affirmed.

---

1. *Bruton* involved a trial by jury. We need not decide whether the rule of *Bruton* applies to a trial before a judge, because we hold *Bruton* inapplicable on other grounds.